IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02209-REB-MJW

TROY A. SHORT,

Plaintiff,

v.

A. J. TRUJILLO, Captain, FLCF,
CORY BURKET, Lieutenant, FLCF, and
JAMES MAESTAS, Lieutenant, FLCF,

Defendants.

---

## RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER (Docket No. 20)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court upon an Order of Reference to United States Magistrate Judge issued by Judge Robert E. Blackburn on December 2, 2008. (Docket No. 18).

Now before the court for a report and recommendation is the pro se incarcerated plaintiff's 'EMERGANCY [sic] DECLARATION OF PLAINTIFF OF NOVEMBER 18TH 2008" (Docket No. 20), which has been construed as a motion for a temporary restraining order ("TRO"). This motion was filed before defendants were served with process in this case.[1] Therefore, this court sent out an order via electronic mail to

---

[1] A Waiver of Service of Summons was filed on December 3, 2008, by defendants Trujillo, Burket, and Maestas. (Docket No. 22).

several people at the Colorado Department of Corrections ("CDOC") and the Colorado Attorney General's Office directing a response. (Docket No. 25).[2] A response was filed on December 22, 2008. (Docket No. 28).

In addition, an evidentiary hearing was held on this motion on January 19, 2009, with plaintiff and all witnesses appearing via videoconferencing from Ft. Lyon Correctional Facility ("FLCF"). Testimony was heard from the plaintiff and his eight inmate witnesses, namely, Marion Duckworth, Clovis Green, Gary Everett II, Michael Stout, Benny Padilla, Robert Bellm, David Hostetler, and Tommy Vanhoose. Defense witnesses were the three named defendants in this action, James Maestas (plaintiff's case manager), Albert Trujillo (Housing Supervisor at FLCF), and Cory Burket (a FLCF Intelligence Officer). Admitted into evidence was plaintiff's Exhibit 1.

The court has considered the motion and response thereto, the testimony and evidence presented at the evidentiary hearing, argument made at the conclusion of the hearing by plaintiff and defense counsel, and applicable Federal Rules of Civil Procedure and case law and the court's file. The court now being fully informed makes the following findings, conclusions, and recommendation that the motion be denied.

**Allegations in the Prisoner Complaint**

Plaintiff asserts the following In his Prisoner Complaint, brought pursuant to 42 U.S.C. § 1983 (Docket No. 4).

**Claim One.** In Claim One, plaintiff claims violations of the Sixth and Fourteenth

---

[2]The key e-mail was sent to an incomplete e-mail address, so a response was not submitted by the deadline contained in the original Order (December 16, 2008). Following an inquiry by the court, a response was filed on December 22, 2008. (Docket No. 28).

Amendments, asserting the following. In December 1995 plaintiff provided information that assisted in the conviction of two members of the Aryan Brotherhood and later provided information regarding criminal activity by the same group. There was a $50,000 contract out on his life. Plaintiff was thus housed in the Protective Custody Unit at the Marion Correctional Institution in Ohio. Defendants were aware of these facts yet have shown deliberate indifference to plaintiff's safety.

Plaintiff states he is a "non-violent prisoner with no history of escape. I assisted authorities in the State of Ohio, and had to be protected in its prison system as a result of said assistance. I then assisted law enforcement in Fremont County, Colorado (see letter of Detective Dodd), and though my life is certainly in danger, I have been detained in a medium security facility, where the Defendant's [sic] have conspired with other prison staff to falsify records instead of protecting me from harm." (Docket No. 4 at 4).

On May 17, 2007, he was assaulted by two other inmates, Eric Souders and Dale Davis, during which he was warned that if anything happens to the "brothers" in Canon City whom plaintiff had "told on" and if plaintiff talked about "the car," that plaintiff would be dead. Plaintiff informed defendant Lt. Maestas of this incident on May 21, 2007, and his response was, "Are you sure you want to make an issue of this? You already have enough security issues, you don't need any more." (Docket No. 4 at 4). Nothing was done about this assault. Mr. Davis has since been released on parole and "Mr. Souders has been held in the same facility, left to orgastrate [sic] my being assaulted yet a second time." (Docket No. 4 at 4).

**Claim Two.** In Claim Two plaintiff also alleges violations of the Sixth and Fourteenth Amendments, asserting the following. In June 2006 he became aware of a

plot to escape from Fremont County Jail and to murder two drug enforcement agents. Plaintiff assisted the Fremont County Sheriff's Office in uncovering and preventing the plot, the perpetrators of which were Adam Nadaeu, Mark Nadaeu, Anthony Sparks, and Cody Washbanks, all of whom belonged to different white supremacist hate gangs. The Nadaeus are allegedly related to someone within the CDOC.

On March 27, 2008, plaintiff was jumped from behind and physically assaulted by inmate David Jennings. Other inmates were also involved, namely, Rummel, Sorenson, Moore, and Pacheco. Plaintiff was treated for his injuries by the Medical Department and photographed by prison staff. Plaintiff was interviewed by defendant Lt. Burket. But for defendants' deliberate indifference for plaintiff's safety, he would not have suffered.

Prior to this incident, plaintiff requested that he be moved to housing Unit 5, where inmates who have been assaulted or threatened or who have serious security issues are housed, but defendant Capt. Trujillo has denied plaintiff's requests. Plaintiff's brother spoke with defendant Burket about moving plaintiff to Unit 5, but Burket said that plaintiff was safer where he was.

An investigation into the assault was not conducted, and defendants have done little or nothing to prevent further harm or injury by these other inmates. Defendants have failed to provide plaintiff reasonable safety and have conspired with each other, as well as with other prison staff, to cover up their wrongdoing.

**Claim Three.** In Claim Three, plaintiff alleges violations of the First, Fourth, Sixth, and Fourteenth Amendments, asserting the following. He should not have been placed in medium security and should have instead been recommended by defendant

Maestas to a medium restricted facility with minimum gang activity, to an interstate transfer to Ohio or another state that provides protective custody, or to the Federal Bureau of Prisons. Plaintiff also should have been placed into Unit 5 by defendant Trujillo after the first assault on May 17, 2007. Defendant Burket should have brought charges against Jennings for the assault and should have conducted a thorough investigation. Defendants conspired with one another, and with other prison staff, to protect themselves against any potential liability by using "redherring tactics" to falsify records.

Plaintiff seeks a total of $450,439.95 in compensatory damages, punitive damages of $150,000, and immediate investigation into his concerns.

**Plaintiff's Motion for a Temporary Restraining Order**

Plaintiff states the following in his motion:

Now comes the Plaintiff offering the following EMERGANCY [sic] Declaration for the following reasons:

1) Plaintiff has just discovered that his one and only copy of Detective Robert Dodd's letter, from the Fremont County Sheriff's Office (filed with case number 05 CR 600 in Fremont County) has been stolen from his locker at the [FLCF] some time within the last three (3) days;

2) As Plaintiff has expressed in his previous declaration to this Court, his locker box has been broken in to on at least two (2) separate occasions, but Detective Dodd's letter to the Fremont County District Court advising it of Plaintiff's involvement in assisting law enforcement stopping at least four (4) major crimes and the filing of charges, had not been stolen from his posession [sic], until now. Today there is a life-threatening letter circulating in the general population which he is incarcerated, adding yet more danger to his life and safety than previously;

3) This Court has the authority and power to remove Plaintiff from the state correctional facility he is housed in, and there exist more than enough facts to support this Court in making such ORDER. Plaintiff therefore begs this Court to review the documentation and any other

evidence it may have as to the seriousness of this matter, and hear his Emergency Injunction, before he is killed, or severely assaulted again.

(Docket No. 20). At the hearing, plaintiff asked alternatively for a transfer to Ohio to return to protective custody, to Florida or another state that offers protective custody, to the Federal Bureau of Prisons, or to Colorado State Penitentiary with retention of his earned time. He asserts that he should not be left alone in a medium facility to fend for himself knowing he is in danger. He is not requesting a lateral transfer to another medium facility or implying that he is in danger from CDOC staff.

In response, defendants assert that (1) the named defendants are without authority to grant the requested relief,[3] (2) in the alternative, plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) as to his claims in support of his motion for a TRO, and (3) in the alternative, plaintiff fails to demonstrate the elements required for entry of a preliminary injunctions with respect to his inmate placement.

The court must liberally construe plaintiff's motion because the plaintiff is proceeding pro se, but the court should not act as a pro se litigant's advocate. Rueb v. California Dept. of Corrections, 2007 WL 1245298 (D. Colo. Apr. 26, 2007) (citations omitted).

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting

---

[3]Plaintiff subsequently successfully moved to add Aristedes W. Zavaras, Executive Director of the CDOC, as a defendant in this action. (See Docket No. 31, granted by this court during the evidentiary hearing). This court will be issuing an order directing service upon defendant Zavaras.

Farmer v. Brennan, 511 U.S. 825, 833 (1994)). To establish a failure to protect claim under the Eighth Amendment, it is necessary for the plaintiff to allege specific facts showing he was incarcerated under conditions posing a substantial risk of serious harm (the objective component of the claim) and that defendants were deliberately indifferent to plaintiff's safety (the subjective component). Id. In the instant case, while the allegations in the plaintiff's motion are serious, plaintiff at best has merely stated and shown speculation that he is in harm's way.

"In order to be entitled to a preliminary injunction or a [TRO] pursuant to Fed. R. Civ. P. 65, the moving party must establish: '(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.'" Teague v. Hood, 2008 WL 2228905, *15 (D. Colo. May 27, 2008) (quoting Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001)). "Because the primary goal of a preliminary injunction is to preserve the pre-trial status quo, courts should be especially cautious when granting an injunction that requires the nonmoving party to take affirmative action-a mandatory preliminary injunction-before a trial on the merits occurs. . . . Therefore, before [the court] will grant such relief, [the court] require[s] a movant seeking such an injunction to make a heightened showing of the four factors." Roda Drilling v. Siegal, — F.3d — , 2009 WL 117018, *3 (10th Cir. Jan. 20, 2009) (citation omitted). "It is the movant's burden to establish that each of these factors tips in his or her favor." Heideman v. South Salt Lake City, 348 F.3d 1182, 1188-89 (10th Cir. 2003) Plaintiff here has not met his burden of proof on any of these factors, heightened or not.

In particular, plaintiff has not made a showing of irreparable harm unless the TRO is issued. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical. . . . Irreparable harm is not harm that is merely serious or substantial. . . . The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." Heiderman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotations and citations omitted). "Purely speculative harm will not suffice, but rather, '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative' and will be held to have satisfied his burden." Roda Drilling Co., 2009 WL 117018, at *5. See Sutton v. Corrections Corp. of Am., 2008 WL 280840, *2 (D. Colo. Jan 31, 2008) (speculative notion that the harm will continue into the future is not properly subject to injunctive relief). Furthermore, the court must "consider the well-established law to the effect that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. . . . Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances." Escobar v. Reid, 2008 WL 4877009, *3 (D. Colo. Nov. 12, 2008) (citations omitted).

This court finds that there was no showing that plaintiff is in imminent danger where he is currently housed and thus there was no showing that there is a clear and present need for equitable relief to prevent irreparable harm. Plaintiff testified that he feels he is absolutely in danger; he is not in fear of CDOC staff but is in fear of inmates who belong to hate gangs. Nevertheless, he is unable to identify a specific threat as a

result of the purported theft from his locker of a letter that was purportedly publicly filed in state court. He has not filed a grievance based upon that "locker box incident." Plaintiff testified concerning his cooperation with authorities, both in Ohio and in Fremont County, Colorado, and the two alleged assaults on him at FTCF, which are described in his Prisoner Complaint and summarized above. In addition, he has not been assaulted since March 2008 but has allegedly experienced on many occasions what he perceives to be threatening remarks. The inmate who assaulted him in March 2008 (Jennings) was returned to general population for two to three weeks and did not assault plaintiff again. Moreover, Jennings is no longer housed at Ft. Lyon Correctional Facility.

None of the plaintiff's witnesses identified any specific threat toward plaintiff. Inmate Everett testified that he did not know of specific threats toward plaintiff, but when he has walked to the chow hall with plaintiff, he has on many occasions seen white supremacists make obvious faces and give some verbal abuse, trying to provoke a fight. He has not observed any physical abuse.

Inmate Padilla, who is blind, heard the alleged assault on plaintiff in May 2007. He heard plaintiff being told that he had to keep his mouth shut or "they'd fuck you up." Padilla has heard others talking about the plaintiff running his mouth and labeling plaintiff as a rat and no good, but he does not know who those people are. He further testified that if it were not for the cameras in the facility, which are not foolproof, plaintiff would be in danger, and maybe plaintiff's life would be in danger. Nevertheless, on cross-examination Padilla admitted that he does not know of any threats on plaintiff's life. He opined that there probably are people who would be willing to hurt the plaintiff.

Inmate Bellm testified that he remembers the situation in May 2007 when two men approached plaintiff and said some words to the effect that plaintiff was a snitch and something about plaintiff keeping his mouth shut. He has heard comments that plaintiff is no good, a snitch, etc. Nevertheless, Bellm, too does not know of any specific plot or threat at this time. He has, however, heard rumors that plaintiff must be dealt with because he is a snitch.

Inmate Hastetler testified that his own life is in danger and that plaintiff's safety is also in danger.

Inmate Vanhoose testified that it has been awhile since he was in the same cell house with the plaintiff. He was aware that things would happen if plaintiff continued with his agenda of accusations. He admitted, however, that he does not know of a specific threat against the plaintiff at this time.

Plaintiff's case manager, defendant James Maestas, testified that plaintiff did not make him aware that plaintiff's locker had been broken into and a letter stolen. Plaintiff did not file a grievance concerning that matter. In addition, plaintiff has not brought to his attention that plaintiff has been threatened. Maestas is not aware of a specific threat that plaintiff is in danger. He does not believe plaintiff is in imminent danger at this time, and he does not recommend a transfer of the plaintiff to another medium security facility. With regard to inmate Jennings, Maestas testified that both plaintiff and Jennings were removed from population after the assault, which is policy. Jennings received a disciplinary violation, was reclassified, and was moved. Maestas was not made aware by plaintiff of any specific threats on plaintiff before the two assaults allegedly occurred in May 2007 and March 2008.

FLCF Housing Supervisor, defendant Albert Trujillo, makes decisions on where inmates are housed, and he outlined the factors he considers when making such determinations. He further testified that when plaintiff was originally placed in FLCF, plaintiff had seven custody issues, but Trujillo found there was no specific reason why he could not place plaintiff anywhere in general population in a medium security facility. Since plaintiff's arrival at FLCF, plaintiff has not personally contacted Trujillo to make him aware of any additional security issues. Trujillo has no knowledge of any specific threats that have been made against plaintiff since mid-November 2008 (when the "locker box incident" allegedly occurred). Trujillo had no knowledge of the "locker box incident" before receiving paperwork for the evidentiary hearing before this court.

With regard to Unit 5, to which plaintiff allegedly sought a transfer, Trujillo testified that there are two tiers. Tier one houses general population inmates for which there is no special criteria. Tier two houses general population inmates and inmates with special medical needs. Unit 5 does not house inmates with special security needs any more so than any other unit.

FLCF Intelligence Officer defendant Cory Burket is partly responsible for identifying security threat groups. An investigation was done when plaintiff was assaulted by Jennings in March 2008. Burket has not been made aware of any threats toward plaintiff since the assault by Jennings. Burket was not made aware of the "locker box incident." Neither plaintiff nor staff has recently made him aware of plaintiff's belief that his life is in danger. There is no current investigation regarding any threats made against the plaintiff. Burket believes plaintiff is not in any imminent danger at this time. He has no knowledge that there is any information that plaintiff should be moved

now.

In sum, this court finds that the plaintiff has not established the requisite irreparable injury if the TRO is denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the plaintiff's 'EMERGANCY [sic] DECLARATION OF PLAINTIFF OF NOVEMBER 18\ :sup:`TH` 2008" **(Docket No. 20)**, which has been construed as a motion for a temporary restraining order, be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: January 23, 2009  s/ Michael J. Watanabe
Denver, Colorado  Michael J. Watanabe
United States Magistrate Judge