IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-02209-REB-MJW

TROY A.  SHORT,

Plaintiff,

v.

A.  J.  TRUJILLO, Captain, FLCF,
CORY BURKET, Lieutenant, FLCF, and
JAMES MAESTAS, Lieutenant, FLCF,

Defendants.

---

**RECOMMENDATIONS ON**
**DEFENDANTS' MOTION TO DISMISS (Docket No. 48)**
**and**
**PLAINTIFF'S MOTION TO ADD SERGEANT SHAD DRAPER AS A DEFENDANT**
**(Docket No. 52)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case is before this court upon an Order of Reference to United States

Magistrate Judge issued by Judge Robert E. Blackburn on December 2, 2008.  (Docket

No. 18).

Now before the court for a report and recommendation are two motions.  The first

motion is the defendants' Motion to Dismiss (Docket No. 48) to which plaintiff filed a

"Rebuttal" (Docket No. 51) and a Memorandum of Law in Support of Plaintiff's Rebuttal

(Docket No. 59).  The second motion is the plaintiff's Motion to Add Sergeant Shad

Draper as a Defendant (Docket No. 52) to which defendants filed a Response (Docket

No. 57), and plaintiff filed a Response (Reply) (Docket No. 60) and an Emergency

2

Declaration (Docket No. 56).  The court has considered these motion papers as well as

applicable Federal Rules of Civil Procedure and case law and the court's file.  The court

now being fully informed makes the following findings, conclusions, and

recommendations.

## Allegations in the Prisoner Complaint

Plaintiff asserts the following In his Prisoner Complaint, brought pursuant to 42

U.S.C. § 1983 (Docket No. 4).

**Claim One.**  In Claim One, plaintiff claims violations of the Sixth and Fourteenth

Amendments, asserting the following.  In December 1995 plaintiff provided information

that assisted in the conviction of two members of the Aryan Brotherhood and later

provided information regarding criminal activity by the same group.  There was a

$50,000 contract out on his life.  Plaintiff was thus housed in the Protective Custody Unit

at the Marion Correctional Institution in Ohio.  Defendants are aware of these facts yet

have shown deliberate indifference to plaintiff's safety.

Plaintiff states he is a "non-violent prisoner with no history of escape.  I assisted

authorities in the State of Ohio, and had to be protected in its prison system as a result

of said assistance. I then assisted law enforcement in Fremont County, Colorado (see

letter of Detective Dodd), and though my life is certainly in danger, I have been detained

in a medium security facility, where the Defendant's [sic] have conspired with other

prison staff to falsify records instead of protecting me from harm."  (Docket No. 4 at 4).

On May 17, 2007, plaintiff was assaulted by two inmates, Eric Souders and Dale

Davis, during which he was warned that if anything happens to the "brothers" in Canon

City whom plaintiff had "told on" and if plaintiff talked about "the car," that plaintiff would

be dead.  Plaintiff informed defendant Lt. Maestas of this incident on

May 21, 2007, and his response was, "Are you sure you want to make an issue of this?

You already have enough security issues, you don't need any more."  (Docket No. 4 at

4).  Nothing was done about this assault.  Davis was subsequently released on parole,

and "Mr. Souders has been held in the same facility, left to orgastrate [sic] my being

assaulted yet a second time."  (Docket No. 4 at 4).

**Claim Two.**  In Claim Two, plaintiff also alleges violations of the Sixth and

Fourteenth Amendments, asserting the following.  In June 2006 plaintiff became aware

of a plot to escape from Fremont County Jail and murder two drug enforcement agents.

Plaintiff assisted the Fremont County Sheriff's Office in uncovering and preventing the

plot, the perpetrators of which were Adam Nadaeu, Mark Nadaeu, Anthony Sparks, and

Cody Washbanks, all of whom belonged to different white supremacist hate gangs.  The

Nadaeus are allegedly related to someone within the Colorado Department of

Corrections ("CDOC").

On March 27, 2008, plaintiff was jumped from behind and physically assaulted by

inmate David Jennings.  Other inmates were also involved, namely, Rummel, Sorenson,

Moore, and Pacheco.  Plaintiff was treated for his injuries by the Medical Department

and photographed by prison staff.  Plaintiff was interviewed by defendant Lt. Burket.

But for defendants' deliberate indifference for plaintiff's safety, he would not have

suffered.

Prior to this incident, plaintiff requested that he be moved to housing unit 5,

where inmates who have been assaulted or threatened or who have serious security

issues are housed, but defendant Capt. Trujillo has denied plaintiff's requests.  Plaintiff's

brother spoke with defendant Burket about moving plaintiff to unit 5, but Burket said that

plaintiff was safer where he was.

An investigation into the assault was not conducted, and defendants have done

little or nothing to prevent further harm or injury by these other inmates.  Defendants

have failed to provide plaintiff reasonable safety and have conspired with each other, as

well as with other prison staff, to cover up their wrongdoing.

**Claim Three.**  In Claim Three, plaintiff alleges violations of the First, Fourth,

Sixth, and Fourteenth Amendments, asserting the following.  He should not have been

placed in medium security and should have instead been recommended by defendant

Maestas to a medium restricted facility with minimum gang activity, to an interstate

transfer to Ohio or another state that provides protective custody, or to the Federal

Bureau of Prisons.  Plaintiff also should have been placed into unit 5 by defendant

Trujillo after the first assault on May 17, 2007.  Defendant Burket should have brought

charges against Jennings for the assault and should have conducted a thorough

investigation.  Defendants conspired with one another, and with other prison staff, to

protect themselves against any potential liability by using "redherring tactics" to falsify

records.

Plaintiff seeks a total of $450,439.95 in compensatory damages, punitive

damages of $150,000, and an immediate investigation into his concerns.

**Defendants' Motion to Dismiss**

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on

5

the following grounds: (1) plaintiff's claim against defendant Zavaras fails to state a

claim upon which relief can be granted due to lack of personal participation, (2) plaintiff

fails to allege a cognizable Eighth Amendment claim, and (3) defendants are entitled to

qualified immunity.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the Complaint as true and resolve all

reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154

F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir.

1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the Complaint fails "to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts

to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008

WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550

U.S. 544 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, . . . a plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp.,

550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right

to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across

the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus,

the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in

support of the pleaded claims is insufficient; the complaint must give the court reason to

believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

6

*these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.

2007) (quoting Bell Atlantic Corp., 127 S.Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519,

520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a

claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to

cite proper authority, his confusion of various legal theories, his poor syntax and

sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same

time, . . . it is [not] the proper function of the district court to assume the role of advocate

for the pro se litigant."  Id.

**Personal Involvement.**  Defendants first assert that plaintiff's claim against

defendant Aristedes W. Zavaras, Executive Director of the CDOC, fails to state a claim

upon which relief can be granted due to lack of personal participation.  "Individual

liability under § 1983 must be based on personal involvement in the alleged

constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each government-official defendant, through the official's own individual actions, has

violated the Constitution."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  As the Tenth

Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the
> misconduct of their subordinates.  "[T]here is no concept of strict
> supervisor liability under § 1983." . . .  "This does not mean that a
> supervisor may not be liable for injuries caused by the conduct of one of
> his subordinates.  It does mean that his liability is not vicarious, that is,

7

without fault on his part." . . . .

Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . . In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

Defendants correctly assert that the Prisoner Complaint and the plaintiff's Motion

for Court Order to Add Mr. Aristedes W. Zavaras as a Defendant in this Instant 1983

Civil Rights Complaint (Docket No. 31)[1] do not contain allegations which, if proven,

would show personal participation on the part of Zavaras. Furthermore, in plaintiff's

arguments in response to defendants' Motion to Dismiss plaintiff asserts:

Plaintiff has stated on several occasions previously that
documentary evidence surrounding this instant case is in fact in the

---

[1]Plaintiff's motion to add Zavaras as a defendant was granted by this court at the beginning of an evidentiary hearing held on the plaintiff's motion for a temporary restraining order. (See Docket No. 42).

8

> possession and care of three (3) [outside] individuals (for personal safety
> reasons), which is pertinent in proving his claims.
>
> On or about 6/10/07, Plaintiff submitted a statement to (then)
> Assistant Warden, C. Smith, regarding his being assaulted on 5/17/07,
> and his deep concerns of being assaulted again.  Plaintiff mailed copies of
> said statement to Arestedes W. Zavaras, New Vision Organization, Inc.,
> and Doug Moore, via First Class U.S. Mail.
>
> Additionally, the Defendants at the Fort Lyon Correctional Facility
> are subordinate prison personell [sic] who have followed the policies,
> practices, and procedures approved and implmented [sic] by Defendant,
> Aristedes W. Zavaras, and as such he is in fact personally responsible.

(Docket No. 51 at 1-2).  These allegations in plaintiff's response demonstrate that

plaintiff's claim against Zavaras is premised on a respondeat superior theory of liability.

It is, however, very well established that such a theory cannot form the basis of a §

1983 claim.  Ashcroft v. Iqbal, 129 S. Ct. at 1948; McKee v. Heggy, 703 F.2d 479, 483

(10th Cir. 1983).  Furthermore, an allegation that the Executive Director was sent a copy

of a statement by the plaintiff is not sufficient to establish personal participation in a

constitutional violation.  See Walker v. Meyer, 2009 WL 961490, *4 (D. Colo. Apr. 7,

2009) ("[M]ere participation in the grievance process is an insufficient basis for asserting

a violation of constitutional rights. . . .  The 'mere involvement of processing a grievance

at an administrative level does not establish the affirmative link required to establish

supervisor liability for an employee's conduct.'") (quoting Boles v. Dansdill, 2007 WL

2770473 , *4 (D. Colo. Sept. 20, 2007)).  "To hold a supervisory prison official liable on

the basis of communications he received, 'would be to hold any well informed [prison

official] personally liable for damages flowing from any constitutional violation occurring

at any jail within that [official's] jurisdiction.  We believe that such a broad theory of

liability is inconsistent with the personal responsibility requirement for . . . a section 1983

action.'" Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982)).

Therefore, this court finds that the plaintiff's allegations are insufficient to establish Executive Director Zavaras's supervisory liability under controlling law. Therefore, it is recommended that the Prisoner Complaint, as amended, be dismissed as against defendant Zavaras.

**Eighth Amendment Claim.**  Defendants next assert that the plaintiff has failed to allege a cognizable Eighth Amendment claim.

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  Nevertheless, prison officials are not expected to prevent all inmate-on-inmate violence. Farmer, 511 U.S. at 834.  To establish a failure to protect claim under the Eighth Amendment, it is necessary for the plaintiff to allege specific facts showing he was incarcerated under conditions posing a substantial risk of serious harm (the objective component of the claim) and that the defendant "knows of and disregards and excessive risk to inmate health or safety" and thus was deliberately indifferent to plaintiff's safety (the subjective component). Id. at 834-37.  Furthermore, "because the Eighth Amendment requires only 'reasonable safety,' prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" Howard v. Waide, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting Farmer, 511 U.S. at 844-45).  "'An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly [or] recklessly declined to act.'" Id. (quoting Rodriguez v. Sec'y for Dep't of Corr., 508

10

F.3d 611, 620 (11th Cir. 2007)).  "In determining whether prison officials acted reasonably, [the court] consider[s] what actions they took, if any, as well as available alternatives that might have been known to them."  Id. at 1240.

In the instant case, defendants assert that assuming *arguendo* that plaintiff has alleged sufficient facts to fulfill the objective test under Farmer, plaintiff's claim still fails because his Complaint does not contain facts that would support a finding that he has met the subjective prong.  More specifically, defendants assert that as to plaintiff's allegations regarding the first assault that occurred on May 17, 2007, plaintiff provides only a conclusory statement that, "the Defendants have been made fully aware of these facts and yet have shown indifference for my safety."  (Docket No. 48 at 7, citing Docket No. 4 at 4).  Defendants contend that plaintiff has failed to allege facts that if true would show that each defendant had subjective knowledge of the substantial risk of harm that he faced.  Defendants assert that in fact, plaintiff admits that he notified only one of the defendants, Lt. Maestas, four days after the assault occurred.  Defendants argue that plaintiff fails to allege facts, which if proven, which would show that Lt. Maestas actually drew an inference that there was a substantial risk of harm to plaintiff, rather than an inference that this was an isolated incident which does not amount to constant or pervasive threat of violence.  According to defendants, plaintiff provides no factual allegations that any defendants knew of a substantial risk of harm to plaintiff and failed to act reasonably with regard to the alleged assault that occurred on May 17, 2007.

With regard to the second assault that occurred over ten months later on March 28, 2008, defendants assert that plaintiff has failed to allege sufficiently facts that would show that they actually knew, by inference or otherwise, that he faced a

substantial risk of harm and failed to act.  Defendants contend that in fact, there is evidence within the Complaint that the defendants acted reasonably after the incident was reported.  More specifically, defendants note that plaintiff acknowledges that he was immediately seen by medical staff and interviewed by Lt. Burket about the incident. In addition, according to plaintiff in the Complaint, the offending inmate, Jennings, was moved to another facility shortly after the incident occurred.

In sum, defendants assert that the plaintiff has failed to allege facts which if proven would establish that defendants had subjective knowledge of the risk of harm, and absent such an actual subjective awareness of the risk, they cannot be deliberately indifferent.  Furthermore, they contend that even if it could be said that they failed to alleviate a potential risk that should have been perceived, but was not, this does not satisfy the deliberate indifference standard.

In response, plaintiff asserts:

> These claims of Defendants are simply an attempt of a mad dash effort to have Plaintiff's Civil Action dismissed with prejudice because [they] are aware of the fact that Plaintiff and his family have recently been in contact with a civil attorney and prisoner rights groups, since an attorney has not been appointed by this Court, and because Plaintiff does in fact have a meritorious case.

> Defendants have also tampered with and withheld "logged legal mail" from being timely mailed to this Court, in [their] effort to cause Plaintiff being time-barred by the ten (10) day statute.

> Furthermore, Plaintiff's claims do in fact meet the Eighth Amendment subjective prong requirements found in Farmer v. Brennan, 511 U.S. 821, 834 (1994).

(Docket No. 51 at 2).

Based upon plaintiff's assault claims, this court finds that for purposes of a

12

motion to dismiss, plaintiff has met the objective component of a deliberate indifference claim, at least with respect to the second alleged assault which allegedly resulted in injuries requiring medical attention.  "Plaintiff's alleged injuries are plausibly sufficiently serious to constitute a deprivation of constitutional dimension . . . and to meet the purpose of limiting claims to significant, as opposed to trivial, suffering."  Aranda v. McCormac, 2009 WL 1765693, *4 (D. Colo. June 18, 2009) (quotations and citations omitted).  Plaintiff, however, has not alleged any physical injuries as a result of the first alleged assault in May 2007.  In any event, assuming plaintiff has met the objective component with regard to both alleged assaults, the court next considers whether the plaintiff has met the subjective component of his Eighth Amendment claims.

"The subjective component of a deliberate indifference claim requires an 'inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.'"  Id. (quoting Farmer, 511 U.S. at 838).  "It is not enough to allege that prison officials failed to alleviate a significant risk that [they] should have perceived but did not. . . . To show the requisite deliberate indifference, [the plaintiff] must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  Id. (quotations and citations omitted).  "The Supreme Court has found a plaintiff may prove that the defendants had actual knowledge of a substantial risk 'in the usual ways.'"  Id. (quoting Farmer, 511 U.S. at 842).  "In other words, a factfinder may infer actual knowledge through circumstantial evidence, or may conclude a prison official knew of a substantial risk from the very fact that the risk was obvious. . . .  Moreover, regardless of how prison officials become subjectively aware of a substantial risk of serious harm to an inmate,

13

the Eighth Amendment requires them to respond reasonably." Id. (quotation and

citation omitted).

Here, the court finds that the plaintiff has failed to allege facts which if proven

would establish that defendants had subjective knowledge of a substantial risk of

serious harm prior to the first assault complained of in Claim One which allegedly took

place on May 17, 2007.  As pointed out by the defendants, plaintiff merely makes a bald

assertion in Claim One that "[t]he Defendant's [sic] have been made fully aware of these

facts [that he provided information in 1995 and later regarding criminal activity by the

Aryan Brotherhood, he was in protective custody in Ohio due to a contract out on his

life] and yet have shown indifference for my safety."  (Docket No. 4 at 4).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative

level." Id.  Plaintiff "has not met his burden of framing a complaint with enough factual

matter (taken as true) to suggest that he . . . is entitled to relief" on Claim One. Howard

v. Waide, 534 F.3d at 1243 (quotations and citations omitted).  Furthermore, the court

takes judicial notice of the plaintiff's Declaration which he submitted with his motion to

amend his complaint.  (Docket No. 31 at 5).  In that Declaration, plaintiff states, "Since

May of 2007, I have repeatedly made Defendants well aware of the immenent [sic]

danger I have been in, which was prior to my being assaulted in April of 2008."  (Docket

No. 31 at 5, ¶ 6).  Thus, it appears that plaintiff admits that he did not make defendants

14

aware of the purported danger until after the first assault allegedly occurred in May 2007.  Consequently, it is recommended that Claim One be dismissed for failure to state a claim upon which relief can be granted.

With regard to Claims Two and Three, however, this court finds that at least for purposes of a motion to dismiss, and taking all of the plaintiff's allegations as true, plaintiff has alleged enough factual matter to state a claim that following that alleged first assault, defendants had and continue to have subjective knowledge of a substantial risk of serious harm, have not reasonably responded to the risk, and thus have allegedly been deliberately indifferent.  For example, plaintiff alleges in the Prisoner Complaint that on or about May 21, 2007, he informed defendant Lt. Maestas of the first alleged incident that allegedly took place on May 17, 2007, and Maestas' purported response was, "Are you sure you want to make an issue of this?  You already have enough security issues, you don't need any more."  Plaintiff also claims that Maestas ignored a grievance plaintiff allegedly submitted in April 2008 regarding the second assault that allegedly occurred on March 27, 2008.  In that grievance, plaintiff purportedly again requested a transfer to protective custody in Ohio or another state or in the Federal Bureau of Prisons.  In addition, plaintiff alleges that prior to the second assault, defendant Captain Trujillo denied all of plaintiff's requests to be moved to housing unit 5, where plaintiff claims offenders who have been assaulted, threatened, or who have serious security issues are housed.  Furthermore, plaintiff alleges that in April 2008 his brother talked with defendant intelligence officer Lt. Burket regarding plaintiff being moved to a safer environment, namely, housing unit 5, but was told that plaintiff was safer where he was.

In sum, while the Prisoner Complaint is not a model pleading, the court finds that with respect to Claims Two and Three, the plaintiff has adequately stated claims upon which relief can be granted so as to defeat defendants' motion to dismiss.

**Qualified Immunity.**  Defendants also assert that they are nonetheless entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id.  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  In this case, defendants assert

16

that the plaintiff meets neither prong of the qualified immunity analysis.  First, they

assert that he failed to demonstrate a violation of a constitutional right.  Second, they

assert that assuming *arguendo* that plaintiff has met the first prong, they are

nevertheless entitled to qualified immunity because their action did not violate clearly

established law.  More specifically, defendants contend that

> [a]s outlined above, the Defendants acted appropriately.  After the assault
> in March, 2008, Short was immediately taken to the Medical Department
> to be evaluated and treated.  Additionally, he was then interviewed by Lt.
> Burket so that an investigation could be conducted.  Further, as [plaintiff]
> admits, the offender who [assaulted plaintiff], Jennings, was transferred to
> another facility shortly after the assault took place.
>
> This inquiry, it is vital to note, must be undertaken in light of the specific context
> of the case, not as a broad general proposition. . . .  This inquiry is thus an
> objective one - whether, in the situation they confronted, . . . and based on the
> information [they] possessed, . . . it was objectively reasonable for Defendants to
> act as they did. . . .  Qualified immunity exists as long as reasonable officials in
> the same situation could disagree on the appropriate course of action to follow. . .
> . The plaintiff must demonstrate that the unlawfulness of the defendants' conduct
> was "apparent" to **any** reasonable administrator. . . .  Qualified immunity is lost
> only if it would be **clear to any** reasonable officer that his conduct was unlawful
> in the **particular** situation he faced and under the circumstances he **personally
> confronted** at the time.  There is no clearly established law in this jurisdiction
> that states that the actions of the Defendants, as alleged in the Complaint,
> violated any law.  As a result, Defendant are immune from liability.

(Docket No. 48 at 10-11) (citations and quotations omitted) (emphasis in original).

        This court, however, finds that the defendants are not entitled to qualified

immunity at this juncture.  "The Supreme Court and the Tenth Circuit have repeatedly

and unequivocally established an inmate's Eighth Amendment right to be protected from

substantial risks of assault by fellow prisoners."  Aranda v. McCormac, 2009 WL

1765693, *6 (D. Colo. June 18, 2009) (citing Farmer, 511 U.S. at 833-34; Ramos v.

Lamm, 639 F.2d 559, 572 (10th Cir. 1980)).  See Howard v. Waide, 534 F.3d at 1242.

17

**Plaintiff's Motion to Amend the Complaint**

Plaintiff moves to amend his Prisoner Complaint to add CDOC Sergeant Shad Draper as a defendant.  (Docket No. 52).  While plaintiff has not tendered a proposed amended pleading, in his motion to amend, he makes the following allegations against Draper.  Draper moved plaintiff to a new room on the evening of May 17, 2007, for no apparent reason, and approximately twenty minutes after such move, plaintiff was assaulted by inmates Davis and Souders.  Draper conspired with those two white supremacists gang members to provide them with a better room in which they could assault plaintiff.  On June 30, 2007, in violation of an Administrative Regulation, Draper failed to act upon plaintiff's allegation that inmate Archuletta broke into plaintiff's locker box and showed a letter from Detective Robert Dodd to other offenders.  On October 10, 2008, Draper ordered Officer Gauna to fire plaintiff from his porter job because inmates Sorenson, Moore, and other white supremacists did not like plaintiff cleaning their restrooms and showers.  Later that month, on October 31, 2008, Draper conspired with inmates Sorenson and Moore in attempting to cause plaintiff to "check-in" and leave the unit and possibly the facility by stating several times over a period of hours over the unit's intercom, "Whoever has the missing shower bar return it or there will be a lock-down."  Draper also told inmate Sorenson to "scare" plaintiff.  On December 10, 2008, in Draper and Officer Gauna confiscated plaintiff's scissors, ink pens, and some legal files.  Draper said that plaintiff no longer had a hobby permit due to plaintiff having been found guilty of an infraction six months earlier.  Draper then confiscated a religious cross plaintiff was wearing, in violation of an Administrative Regulation.  Draper once again confiscated a religious cross from the plaintiff on February 8, 2009, and informed

plaintiff that if he saw plaintiff with another cross, he would write plaintiff up for "unauthorized use."  Plaintiff alleges Draper violated plaintiff's First, Second, Eighth, and Fourteenth Amendment rights.

On March 6, 2009, plaintiff filed an "Emergency [sic] Declaration" in support of his motion to add Draper as a defendant in which he asserts the following.  (Docket no. 56). On March 3, 2009, Draper confiscated plaintiff's cross, and plaintiff asked for a "confiscation slip" at which time Draper threatened, "You better be careful Short, before something really does happen to you" and then told plaintiff he was going to get a report for "unauthorized use."  Plaintiff notes that he had not been wearing his third cross while Draper was on duty.  According to plaintiff, "[s]urely a small 1" x 1½ " little wooden cross is not a threat to anybody, and can only sustain proof of retaliation, not to mention a violation of religious freedom."  (Docket No. 56 at 2).  Plaintiff construes Draper's statement as a threat against his life, and he also claims "outright retaliation" by Draper. (Docket No. 56 at 2).

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted).  Furthermore, Rule 15(d) "provides that a court may permit a party to serve a supplemental pleading setting forth transactions, occurrences, or events that have happened since the date of the pleading sought to be supplemented.  Motions to supplement are addressed to the

19

sound discretion of the court."  Gillihan v. Shillinger, 872 F.2d 935, 941 (10th Cir. 1989).

"The court should apply the same standard for exercising its discretion under Rule 15(d)

as it does for deciding a motion under Rule 15(a). . . .  While Fed. R. Civ. P. 15(a)

requires that leave to amend be freely given, that requirement does not apply where an

amendment obviously would be futile."  Southwest Nurseries, LLC v. Florists Mut. Ins.,

Inc., 266 F. Supp.2d 1253, 1256 (D. Colo. 2003).  Here, defendants assert it would be

futile to permit plaintiff to amend his Complaint.

    With regard to plaintiff's Eight Amendment claim against Draper concerning the

first alleged assault after Draper moved plaintiff to a new cell, this court agrees with

defendants that assuming *arguendo* that plaintiff has alleged sufficient facts to fulfill the

objective test under Farmer, his claim against Draper fails because it does not contain

facts that would support a finding that plaintiff has met the subjective prong under

Farmer.  More specifically, as defendants note, plaintiff provides nothing other than a

conclusory allegation that Sergeant Draper moved plaintiff from one room to another

and shortly thereafter, plaintiff was assaulted.  Plaintiff has not alleged facts that if true

would show that Draper was aware of facts from which the inference could be drawn

that a substantial risk of serious harm existed and that Draper actually drew an

inference.  Therefore, amending the Prisoner Complaint to include this claim would be

futile, and thus such amendment should not be permitted.

    Regarding the plaintiff's allegation that Draper failed to act upon plaintiff's

allegations that another inmate had broken into his locker box, construing this claim

liberally as a failure to protect claim, defendants assert that plaintiff has failed to

sufficiently allege facts that would show that he faced a substantial risk of harm as a

result of another inmate breaking into his locker box.  They contend that the mere fact

that plaintiff alleges that nothing was done as a result of his allegations that someone

broke into his locker box is not sufficient to demonstrate that he was subjected to

conditions posing a substantial risk of harm.  Furthermore, defendants assert that

plaintiff fails to allege or show that he was placed in substantial risk as a result.  In

addition, they contend that plaintiff has provided no factual allegations that Draper

actually knew, by inference or otherwise, that plaintiff faced a substantial risk of harm

and failed to act.  Therefore, it is asserted that because plaintiff cannot satisfy the

objective and subjective elements of an Eighth Amendment claim, it is unlikely that

plaintiff would prevail on his Eighth Amendment claim against Draper.

This court finds, however, that at least for purposes of a motion to dismiss,

plaintiff has adequately stated a claim upon which relief can be granted because a

factfinder could conclude Draper knew of a substantial risk from the very fact that the

risk was obvious.  Plaintiff alleges that "[o]n or about June 30, 2007, Draper failed to act

upon Plaintiff's allegation that offender David Archuletta had broken into his locker box

**and showed a letter from Detective Robert Dodd to other offenders** . . . ."  (Docket

No. 52 at 1, ¶ 2) (emphasis added).  It appears from the original Prisoner Complaint that

the letter from Detective Dodd concerned plaintiff's assistance to the Fremont Sheriff's

Office regarding his knowledge of a plot to escape from the Fremont County Jail and

murder two drug enforcement agents.  A substantial risk of serious injury may very well

be inferred from the allegation that one inmate was allegedly showing other inmates this

letter which concerned plaintiff being an informant.  Therefore, it is recommended that

the plaintiff be permitted to amend his Prisoner Complaint to include Draper as a

defendant with respect to this particular claim contained in Docket No. 52 at 1, ¶ 2.

Regarding plaintiff's claim that Draper ordered another officer to terminate plaintiff from his porter work position, defendants correctly assert that plaintiff's claim fails as a matter of law because he has no particular entitlement to a prison work assignment, and the loss of a prison job does not implicate a property or a liberty interest.  See Penrod v. Zavaras, 94 F.3d 1399, 1407 (10th Cir. 1996); Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986); Grady v. Edmonds, 2007 WL 2986167, *8 (D. Colo. June 11, 2007), adopted by 2007 WL 2962715 (D. Colo. Oct. 10, 2007). Therefore, amending the Prisoner Complaint to include this claim would be futile, and thus such amendment should not be permitted.

Next, with regard to the plaintiff's claim that Draper conspired to violate plaintiff's constitutional rights, "[a] claim of conspiracy requires plaintiff [to] demonstrate direct or circumstantial evidence of a meeting of the minds or agreement among the defendants. . . .  Plaintiff need not offer direct evidence.  Rather, conspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds. . . . However, conclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient." Merritt v. Hawk, 153 F. Supp.2d 1216, 1225 (D. Colo. 2001) (citations omitted).  Here, defendants correctly assert that plaintiff has presented nothing more than conclusory allegations and has not alleged facts that, if proven, would support the elements necessary to establish an entitlement to relief under this legal theory.  Even under the liberal pleading standards applied to pro se litigants, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief

can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). See Hunt v.

Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994) (plaintiff failed "to allege specific facts

showing agreement and concerted action among [the defendants]. 'Conclusory

allegations of conspiracy are insufficient to state a valid § 1983 claim.'"). Therefore,

amending the Prisoner Complaint to include this conspiracy claim would be futile, and

thus such amendment should not be permitted.

Regarding plaintiff's allegation that Draper confiscated his personal property,

including his religious cross, defendants set forth their arguments why such claims are

futile.  (See Docket No. 57 at 9-12).  The court need not address the merits of such

claims, however, because it is recommended that plaintiff not be permitted to

supplement his Prisoner Complaint to include such claims because they have no

relationship to the claims made in the original Prisoner Complaint.  The only link is that

the actions are allegedly done by the same individual, but plaintiff should not be

permitted to add to this action every perceived wrong allegedly committed by Draper

after the action was commenced.  See McDonald v. Miller, 2009 WL 1163388 (W.D.

Okla. Apr. 29, 2009) (Claims in motion to supplement bore no relationship to claim in

the original complaint and involved different parties, different circumstances, and a

different prison.); Harris v. Morton, 2007 WL 2365994 (N.D.N.Y. Aug. 16, 2007) (Claims

in proposed supplemental complaint arose out of an entirely separate incident, involving

different correctional officials from a different correctional facility, and thus the pleading

is not a proper supplemental complaint.  No link aside from the fact that both pleadings

concern car accidents).  Furthermore, "[a]lthough [Fed. R. Civ. P.] 15(d) provides for the

supplementation of pleadings to set 'forth transactions or occurrences or events which

have happened since the date of the pleading sought to be supplemented,' in light of

section 1997e(a), plaintiff may not use Rule 15(d) to add new claims that arose after this

suit was filed. . . .  Allowing plaintiff to supplement to add the claims he seeks to add

would allow plaintiff to thwart the mandate of section 1997e(a), which requires that claim

exhaustion occur prior to filing suit and not during the pendency of the suit." Williams v.

Adams, 2007 WL 1595457 (E.D. Cal. June 1, 2007); Price v. Caruso, 2007 WL 2914232

(W.D. Mich. Oct. 3, 2007) (same).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that defendants' Motion to Dismiss (Docket No. 48) be granted

in part and denied in part.  More specifically, it is recommended that plaintiff's claim

against defendant Zavaras be dismissed.  In all other respects, it is recommended that

the motion be denied.  It is further

**RECOMMENDED** that plaintiff's Motion to Add Sergeant Shad Draper as a

Defendant (Docket No. 52) be granted in part and denied in part.  More specifically, it is

recommended that the plaintiff be permitted to amend his Prisoner Complaint to include

Draper as a defendant with respect to the claim contained in Docket No. 52 at 1, ¶ 2.  In

all other respects, it is recommended that the motion be denied.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

**parties have ten (10) days after service of this recommendation to serve and file**

**written, specific objections to the above recommendation with the District Judge**

**assigned to the case.  The District Judge need not consider frivolous, conclusive,**

**or general objections.  A party's failure to file and serve such written, specific**

24

**objections waives *de novo* review of the recommendation by the District Judge,**

**Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of**

**both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183**

**F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir.**

**1996).**


Date:  July 10, 2009                          s/ Michael J. Watanabe
       Denver, Colorado                     Michael J. Watanabe
                                  United States Magistrate Judge